IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

MARIA JORGE MOLINA, et al.,

Plaintiffs,

v.

ESTEBAN VIDAL-OLIVO, et al.,

Defendants.

Civil No. 11-1882 (GAG)

### MEMORANDUM OPINION

The family of a slain private citizen who purportedly died from unlawful use of police force sued former Puerto Rico Police Department Superintendent Jose Figueroa-Sancha for failure to properly supervise. The strictures of Rule 8 and recent clarification of pleading standards by the Supreme Court and the First Circuit unquestionably protect putative defendants from frivolous litigation while guiding plaintiffs on how to properly plead facts when seeking redress. Access to the underlying rationale for agency or department policy, however, is the only way for some petitioners to obtain sufficient facts to cross Rule 8's threshold, yet 12(b)(6) often stymies such efforts before the aggrieved party can reach discovery.

Supervisory liability doctrine, particularly when coupled with the affirmative defense of qualified immunity, imposes a strenuous burden on those harmed by top government agents.[1] For

---

[1] "Liability will attach . . . where [his] failure to properly train [his] officers 'amounts to deliberate indifference to the rights of persons with whom the police come into contact,' and where a specific deficiency in training is the 'moving force' behind a constitutional injury." Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002) (citing Canton v. Harris, 489 U.S. 378, 388-89 (1989). "A supervisory officer may be held liable for the behavior of his subordinate officers where his 'action or inaction is affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence *or* gross negligence amounting to deliberate indifference." Id. (citing Lipsett v. Univ. of P.R., 864 F.2d 881, 902 (1st Cir. 1988)) (emphasis in original).

**Civil No. 11-1882 (GAG)**                                        2

good cause. The high standard is necessary; no government could function if its leaders operated under a Damoclean threat of being hailed into court. However, an equally meritorious argument favors individual plaintiffs who lack the necessary resources, knowledge, and time to engage in Freedom of Information Act requests or their own independent research to augment factual allegations against top supervisors.

But that is not so in the complaint we consider today--one alleging instances of both *malem prohibitum* and *malem in se*. Plaintiffs' complaint surpasses Rule 8's requirements because the United States has done the legwork. The Civil Rights Division of the Department of Justice compiled a study of the Puerto Rico Police Department ("PRPD") in a 42 U.S.C. § 14141 action brought by the Attorney General of the United States. (See Civil Case No. 12-2039; Docket Nos. 1-4-1-6.) The study, amassed over several years, alleges the PRPD's extraordinary and deliberate indifference to use-of-force policies, deliberate misrepresentations contrary to PRPD statistics, and deliberate indifference to safety. These allegations generally reference the PRPD's leadership, and specifically reference Defendant Figueroa-Sancha.

The court has reviewed the Department of Justice's findings on myriad occasions. Years of investigations and questions yielded the following:

- Following [an] incident, former Superintendent Figueroa Sancha stated publicly that he was responsible for all decisions involving the removal of individuals [from a protest]. He also publicly justified the officers' use of force. However, it is evident that the use of excessive force against protesters was directed at chilling speech and intimidating protesters, rather than protecting public safety or restoring order. First, Figueroa Sancha's claims of widespread lawlessness by protesters are not supported by the number of arrests. At the conclusion of the barrage, only two individuals were arrested for alleged damage to a police vehicle. They were released after a judge found no probable cause. (Civil Case No. 12-2039; Docket No. 1-4 at 32.)

- Further, the Superintendent is responsible for recruiting, selecting, hiring, and terminating cadets who enroll in the University College as PRPD employees. PRPD pays cadets and affords them civil service benefits and protections while they train and study at the University College. Although cadets must serve a two-year probationary period, disciplinary

**Civil No. 11-1882 (GAG)**                              3

actions, including termination, are carried out by PRPD and can only be authorized by the Superintendent. We learned that the academic curricula are not tailored to clear and specific learning objectives or to defined policies or standards. Many officers we interviewed indicated that there was a significant disconnect between what they learned in the University College and actual expectations and requirements from supervisors once they were deployed in the field. Critical courses are also taught from a technical legal perspective, more suitable to law students, without practical and real-world application for officers. For instance, the University College's course on civil rights consisted of a lecture and slides on Puerto Rico's rules of criminal procedure, without any discussion on the application of legal concepts to actual encounters with civilians. While the course cited the United States Constitution as a source of individual rights, it did not discuss specific rights, such as the Fourth Amendment's prohibition on searches and seizures without probable cause or unreasonable uses of force. As an example, the course defined "illegitimate" force as "unjustified, deviating from the law and professional practice," but did not discuss relevant factors when considering the reasonableness of force, such as the severity of the crime at issue or the subject's level of resistance, or other standards. The course contained virtually no interaction or engagement with students using practical examples of lawful and unlawful conduct. (Civil Case No. 12-2039; Docket No. 1-5 at 13.)

- In December 2010, Superintendent Figueroa Sancha reported that PRPD is considering instituting a six-month field training program for all cadets after they complete University College training. He added that PRPD has begun to select mentors for the implementation of the field work program among sergeants and experienced officers who do not have pending administrative investigations. PRPD has not provided information indicating that the new field training program is being implemented. In addition, the most recent class of cadets, which graduated in July 2011, was provided with a shortened pre-service program to allow for prompt deployment to the street. The effectiveness of a field training program depends on many factors, including the quantity and quality of pre-service training. A cursory pre-service program will prevent cadets from learning the policing concepts and skills that are applied in a field training program. The Superintendent has the authority to deploy cadets – carrying regulation firearms – on policing assignments before the cadets complete their pre-service programs. If this practice continues, PRPD must ensure that cadets complete training in core areas, such as cultural sensitivity and diversity; communication skills (including the importance of courtesy and respect); use of force, including deadly force; verbal disengagement techniques and alternatives to the use of force; and integrity and ethics.

**Civil No. 11-1882 (GAG)**                     4

> Cadets should complete scenario-based training in these subjects to prepare them for the many situations they are likely to encounter involving interaction with civilians, including traffic enforcement and mass event likes *fiestas patronales* . . . The quality and quantity of training offered to undercover officers who do not participate in the regular University College training program appears grossly insufficient. (Civil Case No. 12-2039; Docket No. 1-5 at 15.)

- The pattern and practice of excessive force by PRPD is rooted in agency and supervisory deficiencies that have resulted in a culture of indifference to the physical integrity and constitutional rights of Puerto Rico's residents. (Civil Case No. 12-2039; Docket No. 1-4 at 33.)

- Simply put, the failure to instruct officers on the specific actions that they will be held accountable for in the course of their interactions with the public reflects a profound indifference to civil rights. (Civil Case No. 12-2039; Docket No. 1-4 at 34.)

- In sum, PRPD's systems of accountability on use of force are profoundly broken and do not ensure the lawful and effective use of force. PRPD continues to demonstrate a deliberate indifference to the public's safety. (Civil Case No. 12-2039; Docket No. 1-4 at 45.)

These findings allege gross insufficiency, deliberate indifference, and blatant disregard for safety, which plausibly entitle Plaintiffs to relief against Defendant Figueroa-Sancha. Furthermore, the Defendant-Officers in this case could plausibly fall under the umbrella of officers who received allegedly defective training under Defendant Figueroa-Sancha's ostensibly wanton leadership. His motion to dismiss, which includes the affirmative defense of qualified immunity,[2] is thus **DENIED**. (Docket No. 57.)

---

[2] The court forgoes a formal recitation of qualified immunity doctrine. The passages referenced above defeat the defense. Furthermore, Defendant Figueroa-Sancha reportedly accepted responsibility for alleged excessive force by the PRPD. (Civil Case No. 12-2039; Docket No. 1-4 at 32.) A hypothetically reasonable person who formerly served as deputy director of the Federal Bureau of Investigation in Puerto Rico would know that deliberate indifference to safety, civil rights, and excessive force training violates clearly established law. (Civil Case No. 12-2039; Docket No. 1-4 at 32.)

**Civil No. 11-1882 (GAG)**                                          5

      This ruling is not a ruling on the merits. This opinion reflects only the plausibility of Plaintiffs' claims. The court understands that this ruling opens the door to a plethora of similar lawsuits against the PRPD's top officials, including those serving before and after Defendant Figueroa-Sancha's tenure. It is paramount to reiterate that, at this stage, the court makes no credibility determinations or findings of fact. The allegations against Defendant Figueroa-Sancha may be entirely unwarranted, entirely meritorious, or somewhere in between. The standard to overcome a motion to dismiss is simply pleading facts that could plausibly entitle Plaintiffs to relief. Notwithstanding, this opinion does not provide plaintiffs' attorneys *carte blanche* to file unfounded claims against top supervisors without due diligence and proper investigation. Federal Rule of Civil Procedure 11 and the Model Rules of Professional Conduct adopted by this court impose the highest standards of professional conduct on all attorneys.

**SO ORDERED.**

In San Juan, Puerto Rico this 15th day of August, 2013.

                                              *S/Gustavo A. Gelpí*
                                              GUSTAVO A. GELPÍ
                                              United States District Judge